**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NATHANIEL M. SWERGOLD,**

                               **Plaintiff,**

   vs.                                                                  1:14-cv-01410
                                                                               (MAD)

**THOMAS P. DiNAPOLI,** *Individually, and in his capacity as Comptroller of the State of New York*; **KEVIN F. MURRAY,** *Individually, and in his capacity as Deputy Comptroller of the State of New York*; **ROBERT COUGHLIN,** *Individually, and in his capacity as Counsel to the New York State and Local Employees' Retirement System*; **LUKE BIERMAN,** *Individually, and in his capacity as General Counsel for the Comptroller of the State of New York*,

                                **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **DeGRAFF, FOY & KUNZ, LLP**<br>41 State Street<br>Albany, New York 12207<br>Attorneys for Plaintiff | **GEORGE J. SZARY, ESQ.** |
| **ROEMER WALLENS & MINEAUX, LLP**<br>13 Columbia Circle<br>Albany, New York 12203<br>Attorneys for Plaintiff | **JAMES W. ROEMER, JR., ESQ.** |
| **ATTORNEY GENERAL OF THE<br>STATE OF NEW YORK**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **RACHEL M. KISH, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Nathaniel M. Swergold ("Plaintiff") commenced this action on November 20, 2014 claiming that Thomas P. DiNapoli, Kevin F. Murray, Robert Coughlin, and Luke Bierman ("Defendants"), in their individual capacities, violated his due process rights under the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment"). *See* Dkt. No. 1. Plaintiff moves for partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure ("rule 56"), *see* Dkt. No. 19, and Defendants cross-move pursuant to rules 12(b)(6), 15(a)(2), and 56 of the Federal Rules of Civil Procedure ("rule 12(b)(6)" and "rule 15(a)(2)," respectively) for judgment in their favor or, in the alternative, leave to amend their pleading, *see* Dkt. No. 22.

## II. BACKGROUND

Plaintiff is an attorney in good standing and admitted to practice law in the courts of the State of New York since 1961. *See* Dkt. No. 22-6 at ¶ 1. In May 1972, Plaintiff was hired to perform legal services as general counsel to the Lawrence Sanitary District #1, Town of Hempstead (the "District") and provided that service continuously until his retirement. *See id.* at ¶ 12. Plaintiff was classified by the District as an employee and, in 1972, the District made a request to create the civil service position of general counsel, which was approved by the Nassau County Civil Service Commission and the New York State Civil Service Commission. *See id.* at ¶¶ 13-14; Dtk. No. 19-8 at 9-14. The position was filed in the appendices of the Nassau County Civil Service Commission Rule Book as a position of employment. *See* Dkt. Nos. 19-8 at 9-14; 22-6 at ¶¶ 13-14. Plaintiff enrolled in the New York State and Local Employees Retirement System ("ERS") as an exempt employee and Tier 1 member, and he accrued retirement service credit from 1972 until his retirement. *See id.*

In February 2008, the Comptroller of the State of New York (the "Comptroller"), Defendant DiNapoli, established an internal task force to review systematically the status of licensed professionals who had been reported to the ERS as employees of public employers. *See* Dkt. No. 22-7 at ¶ 2. The task force determined that Plaintiff was an independent contractor rather than an employee and recommended that Plaintiff be removed from the ERS. *See* Dkt. No. 27-5 at ¶¶ 3, 8. Thereafter, on May 5, 2008, Defendant Kevin F. Murray, the deputy comptroller for the division of retirement services in the Office of the State Comptroller ("OSC"), signed a letter to Plaintiff that stated, in part, as follows:

> Based upon a review of your relationship with Lawrence Sanitary District #1, it has been determined that you were registered as an employee when, in fact, you were an independent contractor.
>
> Service rendered to a public employer as an independent contractor is not credible with the Retirement System. Therefore, your enrollment is invalid. We have advised Lawrence Sanitary District #1 to stop reporting your salary. As you are not entitled to membership, any member contributions on deposit in your account will be automatically returned to you.

Dkt. No. 1 at 13.

According to the findings of facts adopted by the Deputy Comptroller of the ERS, Plaintiff was denied service credit and his membership in the ERS was revoked. *See* Dkt. No. 1 at 43, 56. It has been admitted that Defendants acted under color of state law with respect to the invalidation of Plaintiff's membership in the ERS and revocation of service credit. *See* Dkt. No. 22-6 at ¶ 29. On May 7, 2008, Defendant DiNapoli announced that Plaintiff's membership in the ERS was revoked along with his retirement service credit. *See* Dkt. No. 1 at 58. In the press release, Defendant DiNapoli stated that his office conducted investigations "to make sure pensions [were] only going to those people who have earned them." *Id.* Defendant DiNapoli

3

ensured that local taxpayers would be made whole by recovering pension benefits paid out wrongly. *See id.*

On May 23, 2008, Plaintiff commenced a declaratory judgment action in New York Supreme Court, Albany County, pursuant to section 3001 of the New York Civil Practice Law and Rules ("C.P.L.R.") seeking declaratory judgment and injunctive relief. *See* Dkt. No. 22-4. The state court justice dismissed the complaint except for two claims for injunctive relief alleging due process violations and converted them into proceedings pursuant to article 78 of the C.P.L.R. *See Swergold v. Cuomo*, 70 A.D.3d 1290, 1292 (3d Dep't 2010). Plaintiff appealed this trial court decision, and, while the appeal was pending, a decision from separate article 78 proceedings involving a similarly situated plaintiff was issued, finding that the Comptroller violated the plaintiff's due process rights by failing to provide meaningful notice of the basis for terminating retirement credits, among other findings. *See Hoover v. DiNapoli*, Index No. 2414-09 (Sup. Ct. Albany Cty. Sept. 22, 2009); *see also* Dkt. No. 19-10.

Based upon the *Hoover* court's decision, Defendant Murray submitted an affidavit to the appellate court advising that the Comptroller was taking steps to revoke the prior determination issued to Plaintiff. *See* Dkt. No. 19-6 at ¶ 3. Pursuant to the ruling in *Hoover*, Defendant Murray advised the appellate court that his office planned to provide adequate notice of any future determination, including the reasons for a termination of membership and the process to challenge any determinations. *See id.* at ¶ 3. Further, Defendant Murray advised that no retirement credits would be revoked unless and until a party had adequate opportunity to be heard in a formal administrative hearing. *See id.* at ¶ 4. The appellate court, based on the defendants' representation, found that Plaintiff's declaratory judgment causes of action seeking injunctive relief were rendered premature. *See Swergold*, 70 A.D.3d at 1293.

4

Thereafter, an attorney from the Comptroller's office sent a letter, dated November 30, 2009, to Plaintiff advising that the ERS withdrew the previous determination with respect to his status as an independent contractor. *See* Dkt. No. 22-5. Also, the letter advised Plaintiff that he would be provided with a proposed determination and an opportunity to respond prior to any further action being taken with respect to his credited service or membership in the ERS. *See id.* In a letter dated January 3, 2011, Plaintiff was advised again by Defendant Murray that he was not eligible for membership in the ERS but this letter included the determinative factors for this decision. *See* Dkt. Nos. 1 at 40; 22 at ¶ 35. Defendant Murray also advised Plaintiff of the right to an administrative hearing to challenge this determination and, if Plaintiff did not request a hearing within four months, he would then be removed from the ERS. *See id.*

Plaintiff timely filed a request for a formal administrative hearing pursuant to New York Retirement and Social Security Law ("R.S.S.L.") § 74. That hearing was conducted by administrative law judge Michael C. Eidens (the "ALJ") over eight days spanning November 29, 2011 through October 3, 2012. *See* Dkt. No. 22-6 at ¶ 36. The ALJ found that Plaintiff was an employee of the District and, therefore, eligible for membership in the ERS and to receive retirement service credit. *See id.* at ¶ 37. On July 19, 2013, the Deputy Comptroller of the ERS adopted the ALJ's findings of fact and conclusions of law and approved Plaintiff's application for membership and service credit. *See id.* at ¶ 38.

Plaintiff commenced the present action on November 20, 2014 by the filing of a complaint, alleging for the first time a cause of action pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Specifically, Plaintiff claims that Defendants violated his due process rights under the Fourteenth Amendment. *See id.* at ¶ 1. Plaintiff moves for a partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure seeking judgment that Defendants, acting under

5

color of state law, violated his due process rights under the Fourteenth Amendment. *See* Dkt. No. 19. Defendants cross-move pursuant to rule 15(a)(2) seeking to amend their answer to assert that Plaintiff's claims are barred by the statute of limitation. *See* Dkt. No. 22-1. Defendants also cross-move pursuant to rules 12(b)(6) and 56 seeking dismissal of the action based upon statute of limitations, qualified immunity, res judicata, collateral estoppel, and failure to state a claim for which relief can be granted. *See id.*

### III. DISCUSSION

**A.     Motion to Amend the Answer**

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." This section also states that courts should grant leave freely "when justice so requires." *Id.* "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citing *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (affirming the district court's decision to allow the defendants to amend the answer to include a statute of limitations affirmative defense after four years of litigation). With the caveat that "'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Block*, 988 F.2d at 350 (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). Without a showing of bad faith or undue prejudice, delay alone is not a basis "to deny the right to amend." *Block*, 988 F.2d at 350 (quoting *Fluor*, 654 F.2d at 856).

Several factors are considered when determining if an amendment would cause undue prejudice, which include (1) whether the opposing party would have to "expend significant additional resources," (2) whether there would be a significant delay in litigating the claims to a

resolution, and (3) whether the failure to assert the proposed amendment prevented "the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350 (first citing *Tokio Marine & Fire Ins. Co. v. Emp'rs Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986); and then citing *Fluor*, 654 F.2d at 856; and then citing *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1157-58 (2d Cir. 1968); and then citing *Calloway v. Marvel Entm't Grp.*, 110 F.R.D. 45, 48 (S.D.N.Y. 1986)); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (noting that a court must be hesitant to grant amendments where there is unfair surprise and encumbrance of the fair prosecution of a claim). The non-movant must show prejudice beyond "spent time and money preparing for trial" in order "to warrant a deviation from the rule broadly allowing amendment to pleadings." *Monahan*, 214 F.3d at 284; *see also id.* at 275; *Block*, 988 F.2d at 351.

In this case, Defendants served their answer on January 14, 2015 without asserting an affirmative defense that the action was barred by the statute of limitations. *See* Dkt No. 11. According to Defendants, the stipulated scheduling order for the case contained a deadline of April 1, 2015 to amend all pleadings, *see* Dkt. No. 27 at 17, and Defendants filed a cross-motion to amend the answer on April 20, 2015, *see* Dkt. No. 22 at 1. Although Plaintiff is correct that Defendants do not provide any explanation for the omission of the affirmative defense beyond mere oversight, Plaintiff does not claim to be surprised by the affirmative defense and, certainly, "had knowledge of the facts giving rise to the defense." *Monahan*, 214 F.3d at 384; *see also* Dkt. No. 27 at 17-21. Plaintiff also does not claim to be prejudiced by the amendment under any of the factors discussed here. The oversight by Defendants in omitting the statute of limitations affirmative defense is concerning but, under these circumstances, there is no evidence of

7

prejudice or bad faith. Accordingly, the Court grants Defendants' cross-motion to amend their answer to assert a statute of limitations affirmative defense.

**B.     Statute of Limitations**

Plaintiff clarifies in his motion papers that he is alleging a "stigma-plus" claim. *See* Dkt. No. 27 at 17-19. That is, a claim that he has been deprived of a liberty interest, i.e., the loss of his reputation coupled with the deprivation of a tangible interest. *See Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004); *see also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980) ("It is well-settled that an individual's liberty can be implicated when a governmentally imposed stigma restricts his ability to seek and obtain employment."). "The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest." *Patterson*, 370 F.3d at 329. "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Id.* (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999)) (stating that a party must look to a state law defamation action where there is loss of reputation alone). "Loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." *Patterson*, 370 F.3d at 330 (first citing *Bd. of Regents v. Roth*, 408 U.S. 564, 572-73 (1972) and then citing *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994)).

This type of section 1983 liberty interest claim is referred to as a stigma-plus claim and "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some

8

tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001)); *see also Patterson*, 370 F.3d at 330 (stating that "a plaintiff must first show that the government made stigmatizing statements about him – statements that call into question plaintiff's 'good name, reputation, honor, or integrity'" (quoting *Quinn*, 613 F.2d at 446))).

For the first element, the statement does not need to actually injure the plaintiff. *See Brevot v. New York City Dep't of Educ.*, No. 4 Civ. 7959, 2007 WL 690130, *4 (S.D.N.Y. Mar. 6, 2007) (citing *Velez*, 401 F.3d at 87), *aff'd*, 299 Fed. Appx. 19 (2d Cir. 2008). This element is satisfied if there is "the mere threat" of injury. *Id.* at *4 (internal quotations marks omitted) (quoting *Velez*, 401 F.3d at 87). Also, the stigmatizing statement does not need to be proven false as a part of this claim, but the statement must have been made public and must have been concurrently made in time to the alleged deprivation. *See Patterson*, 370 F.3d at 330. "There is no requirement that in order to succeed on a stigma-plus claim a plaintiff must produce an 'explicit public statement by a municipal official accusing the discharged employee of immoral or illegal conduct.'" *Id.* at 334 (internal citations and quotation marks omitted) (quoting *Quinn*, 613 F.2d at 447). If a plaintiff establishes the stigma-plus test, then he has "been deprived of a liberty interest, and the Fourteenth Amendment prohibits such a deprivation without due process of law." *Brevot*, 2007 WL 690130, at *4.

However, the Court does not reach the substance of Plaintiff's stigma-plus claim because it is barred by the applicable statute of limitations. *See id.* at *5. Plaintiff's due process claim is brought pursuant to section 1983, which "provides a remedy for the deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color

9

of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *Id.* (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924 (1982) (citing 42 U.S.C. § 1983)). There is not a federal statute of limitations that governs these actions, and, therefore, the "courts apply the forum state's general personal injury statute of limitations," which is three years in New York. *Ruane v. Cty of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013) (internal quotation and citations omitted); *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001).

"While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly*, 254 F.3d at 41 (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)); *see also Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994). The statute of limitations does not change based upon the relief being sought in the section 1983 claim. *See Ruane*, 923 F. Supp. 2d at 458. On May 5, 2008, Plaintiff was advised by Defendant Murray that the OSC determined that he was wrongly identified as a public employee instead of an independent contractor. *See* Dkt. No. 1 at 13. Plaintiff was advised that his service was not credible and his contributions on deposit would be returned. *See id.* Defendant Murray stated that this was a final determination. *See id.*

On May 7, 2008, the office of the Comptroller issued a press release statement with the caption "DiNapoli Removes More Lawyers From Retirement System," which stated that Plaintiff was "wrongly reported as an employee[]" by the District. *See* Dkt. No. 1 at 58. This statement was made in the context of the Comptroller's announcement that his office was revoking ERS membership, rescinding retirement service credit, and planning to recover pension benefits paid out to wrongly classified individuals. *See id.* Defendant DiNapoli stated that his office was "conducting a rational, in-depth examination to make sure pensions are only going to those people

who have earned them." *Id.* Plaintiff was identified by name as one of these employees. *See id.* The deprivation of a right, Plaintiff's loss of membership and retirement service credit, and the stigmatizing statement, the press release, both occurred in May 2008. Plaintiff does not argue that he was unaware of either the statement or the deprivation in May 2008. Therefore, the statute of limitations for Plaintiff's stigma-plus claim expired in May 2011.[1]

Plaintiff argues that, pursuant to the decision in *D'Agostino v. DiNapoli*, No. 1:09-CV-1347, 2010 WL 2925703 (N.D.N.Y. July 20, 2010), the statute of limitations did not start to run until July 19, 2013, which is the date of the final determination of the deputy comptroller for the ERS. *See* Dkt. No. 27 at 17-19. In *D'Agostino*, the Court rule that the plaintiff's claim for harms that arose from the unjustified deprivation of retirement benefits were not prudentially ripe. *See id.* at *3, *6 (finding that the "case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay"). In that decision, the Court did not address statutes of limitations, and, to the extent that the Court was addressing a stigma-plus claim, it did not hold that the statute of limitations began to accrue after the administrative determination. *See id.*

---

[1] To the extent that Plaintiff alleges a section 1983 claim based upon the violations of his procedural due process rights under the Fourteenth Amendment seeking damages stemming therefrom (separate from Plaintiff's stigma-plus claim, which also alleges the deprivation of a liberty interest but seeks damages for his impugned reputation), the Court finds that this claim is barred by the three-year statute of limitations. A procedural due process claim must establish that a person acting under the color of state law deprived a person of a property interest protected by the Constitution or laws of the United States without prior notice and an opportunity for hearing. *See Ceja v. Vacca*, 503 Fed. Appx. 20, 22 (2d Cir. 2012). This claim also accrues at the time the plaintiff knows or has reason to know of the harm. *See Veal*, 23 F.2d at 724; *Connolly*, 254 F.3d at 40-41; . Plaintiff's deprivation of membership in the ERS and retirement credits occurred on May 5, 2008, or shortly thereafter, which is when Plaintiff received a letter advising him of that revocation. Accordingly, the statute of limitations for that claim expired on May 5, 2011, or shortly thereafter, and is now time barred.

11

It is essential that a party does not "mistakenly conflate[] the nature of [his] claimed damages with [his] injury." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013). It is common that a claim seeks past, present, and future damages, and "[w]hether a particular damages model is supported by competent evidence sufficient to render it non-speculative is analytically distinct from whether the underlying claim is ripe for adjudication." *Id.* (stating that a claim is not "rendered prudentially unripe by the possibility that its damages may prove too speculative to support recovery"). In this case, Plaintiff's argument is that the statute of limitations should start to accrue from the time that his damages were most defined – after the his status as a qualifying ERS employee was determined. *See* Dkt. No. 27 at 17-21. The Court is not persuaded.

A stigma-plus claim requires "only to allege, not prove, that the statement is false in order to establish a due process right." *Woodley v. City of New York*, No. CV-09-5709, 2010 WL 1713608, *2 (E.D.N.Y. Apr. 28, 2010) (internal quotation marks and citations omitted) (stating that even if the standard required proof of the statement's falsity, a separate proceeding's outcome is not required to establish it because falsity could be proven within the context of a particular case). "[A] stigma-plus claim accrues once the plaintiff has suffered the *potential* consequences of the stigmatizing allegations, not the *actual* consequences." *Id.* In this case, Plaintiff was aware of the stigmatizing statement and the deprivation of his membership in the ERS and the loss of his retirement service credits in May 2008. The Court therefore finds that Plaintiff's stigma-plus claim accrued on the latter date of either the "stigma" or the "plus" which, here, it is the stigmatizing press statement dated May 7, 2008. This is when Plaintiff was aware that he was injured by the *potential* consequences of the stigmatizing statement with the deprivation of a protected interest. *See Brevot*, 299 Fed. Appx. at 20 (stating that the statute of limitations began

12

to run from the "plus" in her claim (placement on an ineligible list) even though she had not suffered an actual job loss, and the statute of limitations is not affected by an actual job loss six years later). To find that the statute of limitations begins to accrue, as contended by Plaintiff, would "conflate" the nature of his damages with the timing of his injury.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' cross-motion to amend the answer pursuant to rule 15 of the Federal Rules of Civil Procedure is **GRANTED**, and the Court further

**ORDERS** that Defendants' cross-motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**, and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment pursuant to rule 56 of the Federal Rules of Civil Procedure is **DENIED**, and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November , 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge